GUIDRY, J.
 

 | sIn this medical malpractice action, plaintiffs, Jerry Bickham, Ella Bickham, Candace Bickham, and Jyra Bickham, appeal from a judgment of the trial court, granting summary judgment in favor of defendants, Lifeline Emergency Medical Services Company, Inc. and Royal Indemnity Company, and dismissing the plaintiffs’ claims against them with prejudice. For the reasons that follow, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 On November 30, 1997, Jerry Bickham was injured in an automobile accident and
 
 *164
 
 was taken to the emergency room at Riverside Medical Center (Riverside). Mr. Bickham was subsequently transferred from Riverside by appellee, Lifeline Emergency Medical Services Company, Inc. (Lifeline), to East Jefferson General Hospital. While at East Jefferson General Hospital, Mr. Bickham suffered a spinal cord compression while being moved to change his bed linens, which resulted in his being rendered a quadriplegic.
 

 Plaintiffs filed two suits against various medical providers involved in Mr. Bick-ham’s treatment. The first suit, which named Lifeline as one of several defendants, was filed in the Twenty-Second Judicial District Court for the Parish of Washington. A second suit, naming Louisiana Medical Mutual Insurance Company (LAMMICO) and Delta Radiology, et al., was filed in the Civil District Court for the Parish of Orleans. Plaintiffs subsequently entered into a settlement agreement with Delta Radiology and its insurer, LAMMI-CO, together with the Louisiana Patient’s Compensation Fund (PCF), for $800,000.00, plus future medical expenses. Plaintiffs, however, reserved all rights against other defendants.
 

 Thereafter, the remaining defendants in both suits, including Lifeline, filed motions for summary judgment, seeking dismissal of plaintiffs’ claims on the basis that they had recovered the maximum amount under the damages cap provided by |4the Medical Malpractice Act, La. R.S. 40:1299.42. Following a hearing on the motions, the trial court signed a judgment on August 15, 2007, granting Lifeline’s motion for summary judgment and dismissing plaintiffs’ claims against Lifeline and Royal Indemnity Company with prejudice. Plaintiffs now appeal from this judgment.
 

 DISCUSSION
 

 Appellate courts review summary judgments de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate.
 
 Lieux v. Mitchell,
 
 06-0382, p. 9 (La.App. 1st Cir.12/28/06), 951 So.2d 307, 314,
 
 writ denied,
 
 07-0905 (La.6/5/07), 958 So.2d 1199. A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B);
 
 Independent Fire Insurance Company v. Sunbeam Corporation,
 
 99-2181, p. 7 (La.2/29/00), 755 So.2d 226, 230-231.
 

 The burden of proof on a motion for summary judgment is on the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to provide factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2).
 

 At the time of the alleged malpractice at issue, Louisiana Revised Statute | ,40:1299.42 provided, in pertinent part:
 

 A. To be qualified under the provisions of this Part, a health care provider shall:
 

 (1) Cause to be filed with the board proof of financial responsibility as provided by Subsection E of this Section.
 

 (2) Pay the surcharge assessed by this Part on all health care providers according to R.S. 40:1299.44.
 

 
 *165
 
 (3) For self-insureds, qualification shall be effective upon acceptance of proof of financial responsibility by and payment of the surcharge to the board. Qualification shall be effective for all others at the time the malpractice insurer accepts payment of the surcharge.
 

 B. (1) The total amount recoverable for all malpractice claims for injuries to or death of a patient, exclusive of future medical care and related benefits as provided in R.S. 40:1299.43, shall not exceed five hundred thousand dollars plus interest and cost.
 

 (2) A health care provider qualified under this Part is not liable for an amount in excess of one hundred thousand dollars plus interest thereon accruing after April 1, 1991, for all malpractice claims because of injuries to or death of any one patient.
 

 (3)(a) Any amount due from a judgment or settlement or from a final award in an arbitration proceeding which is in excess of the total liability of all hable health care providers, as provided in Paragraph (2) of this Subsection, shall be paid from the patient’s compensation fund pursuant to the provisions of R.S. 40:1299.44(0).
 

 (b) The total amounts paid in accordance with Paragraphs (2) and (3) of this Subsection shall not exceed the limitation as provided in Paragraph (1) of this Subsection.
 

 In moving for summary judgment, Lifeline asserted that the plaintiffs had already received an amount in excess of the total amount recoverable for their malpractice claims from other qualified health care provider defendants, and therefore, they are statutorily precluded from recovering any additional damages from other qualified healthcare provider defendants, such as itself. In support of its motion, Lifeline attached a letter from the PCF dated March 19, 1999, stating that Lifeline was enrolled with the PCF under the provisions of La. R.S. 40:1299.41, et seq., from May 15, 1997, through May 15, 1999. Additionally, Lifeline, in ^adopting the motion for summary judgment memoranda and arguments of its co-defendants, presented the deposition testimony of Jerry Bickham, in which Bickham stated that the plaintiffs had received $800,000 in settlement from the second suit in the Civil District Court for the Parish of Orleans.
 

 From our review of the record, Lifeline presented prima facie proof that it is a qualified health care provider within the protections afforded by the Medical Malpractice Act
 
 [1]
 
 and pointed out that the plaintiffs had received an amount in excess of the $500,000 statutory cap. Therefore, the burden shifted to the plaintiffs to put forth evidence creating a genuine issue of material fact, so as to defeat Lifeline’s motion for summary judgment.
 

 Plaintiffs assert that, despite their settlement with Delta Radiology, LAMMICO, and the PCF, their recovery of $800,000 does not preclude them from proceeding against other qualified health care provider defendants found to be eompara-
 
 *166
 
 tively at fault for
 
 uncapped
 
 damages up to their individual $100,000 limitation on liability.
 
 See
 
 La. R.S. 40:1299.42(B)(2). In support of this argument, plaintiffs rely on La. R.S. 40:1299.42(B)(1), which provides that the “total amount recoverable for all malpractice claims for injuries to or death of a patient,
 
 exclusive of future medical care and related benefits as provided in R.S. 4.0:129943,
 
 shall not exceed five hundred thousand dollars plus interest and cost.” (Emphasis added.)
 

 The relevant version of La. R.S. 40:1299.43(B)(1) provides that ‘“[f]uture medical care and related benefits’ for the purpose of this Section means all | Treasonable medical, surgical, hospitalization, physical rehabilitation, and custodial services and includes drugs, prosthetic devices, and other similar materials reasonably necessary in the provision of such services,
 
 after the date of the injury.”
 
 (Emphasis added.) Accordingly, “future medical care and related benefits” encompasses all past, present, and future medical and related care services necessitated by a qualified health care provider’s negligence, not just what is usually thought of as “future” medical needs.
 
 [2]
 

 Kelty v. Brumfield,
 
 93-1142 (La.2/25/94), 633 So.2d 1210, 1217.
 

 However, La. R.S. 40:1299.43(D) provides that “[pjayments for medical care and related benefits
 
 shall be paid by the patient’s compensation fund
 
 without re-
 

 gard to the five hundred thousand dollar limitation imposed in R.S. 40:1299.42.” (Emphasis added.) Therefore, according to the plain language of the statute, it is the PCF, not the qualified health care provider, who is responsible for payment of medical care and related benefits as contemplated by La. R.S. 40:1299.43.
 
 See Watkins v. Lake Charles Memorial Hospital,
 
 04-355, pp. 6-8 (La.App. 3rd Cir.12/15/04), 896 So.2d 130, 135-136,
 
 writ denied,
 
 05-0145 (La.4/8/05), 898 So.2d 1279 (affirming trial court judgment casting PCF in judgment for medical expenses and related benefits
 
 already incurred)-, see also LeRay v. Bartholomew,
 
 03-1370 (La.App. 5th Cir.3/30/04), 871 So.2d 492 (affirming trial court judgment against lsthe PCF for future medical care and related benefits previously incurred);
 
 Hernandez v. Chalmette Medical Center,
 
 01-0074 (La.App. 4th Cir.2/4/04), 869 So.2d 141,
 
 writs denied,
 
 04-0517 and 04-0546 (La.4/8/04), 870 So.2d 277 and 279 (affirming trial court judgment in favor of plaintiffs and against the PCF for medical expenses already incurred as well as future medical care and related benefits for the remainder of plaintiffs life); and
 
 see also
 
 La. R.S. 40:1299.44(B).
 

 Accordingly, plaintiffs’ argument that they may still recover uncapped future medical care and related benefits from Lifeline, up to its individual liability of
 
 *167
 
 $100,000, is without merit. Based on the clear wording of the statute above, the plaintiffs can only recover payment of accrued future medical care and related benefits from the PCF, which, according to the consent judgment filed by the plaintiffs in the second suit, has already settled with the plaintiffs for $700,000 and has been released from any further liability.
 
 [3]
 

 Plaintiffs also argue that a factual issue exists as to whether Mr. Bickham suffered two injuries, and therefore, whether two statutory caps apply. In examining a similar argument, this court in
 
 Maraist v. Alton Ochsner Medical Foundation,
 
 00-0404, p. 7 (La.App. 1st Cir.4/4/01), 808 So.2d 566, 569-570,
 
 writ denied,
 
 01-2031 (La.11/2/01), 800 So.2d 882, stated that when damage cannot be apportioned between multiple tortfeasors because the damage is indivisible, the claim is not severable, and only one statutory cap applies. However, if the damage or injury can be divided into two or more parts, with each part caused by a separate defendant, then each part constitutes, in effect, a separate injury under La. R.S. 40:1299.42(B)(1).
 
 Maraist,
 
 00-0404 at p. 7, 808 So.2d at 570.
 

 In
 
 Maraist,
 
 two different Ochsner Clinic physicians had failed to diagnose bacterial meningitis in the plaintiffs’ infant daughter, Brittany, for approximately | nfour days. The plaintiffs also alleged that Brittany received substandard care at the Medical Center of Baton Rouge, where she was sent by an Ochsner physician for treatment once he suspected Brittany had meningitis. As a result, the meningitis left Brittany profoundly neurologically impaired. This court found that the effect of the malpractice acts, viewed singly or collectively, was not determinable until the bacterial meningitis was discovered, and plaintiffs’ damages could not be calculated, whether caused by the Medical Center of Baton Rouge or the Ochsner defendants, with reference to any date other than when the bacterial meningitis was discovered.
 
 Maraist,
 
 00-0404 at p. 7, 808 So.2d at 570.
 

 In the instant case, the evidence of record indicates that Mr. Bickham suffered spinal injuries, which ultimately resulted in his being rendered a quadriplegic. The plaintiffs have alleged in various pleadings that the failure of multiple health care providers to diagnose, stabilize, and treat these injuries resulted in Mr. Bickham’s permanent paralysis. The plaintiffs, however, have not presented any evidence indicating that the damages sustained by Mr. Bickham can be divided into parts, with each part traceable back to a
 
 specific
 
 delictual origin.
 
 See Turner v. Massiah,
 
 94-2548 (La.6/16/95), 656 So.2d 636, 640;
 
 see also Maraist,
 
 00-0404 at p. 7, 808 So.2d at 570. Plaintiffs’ argument that a second injury can be
 
 inferred
 
 is simply not sufficient to sustain their burden of proof on the motion for summary judgment.
 

 Therefore, based on the record before the court, we conclude that Mr. Bickham suffered a single, indivisible injury from which all plaintiffs’ damages flow. Because the plaintiffs have recovered the statutory maximum permitted under La. R.S. 40:1299.42(B)(1) for Mr. Bickham’s injury, plaintiffs cannot recover any additional amount from Lifeline for the damages Mr. Bickham may have suffered as a result of Lifeline’s medical treatment and care of him.
 
 See Maraist,
 
 00-0404 at p. 8, 808 So.2d at 570.
 

 
 *168
 
 ImFinally, plaintiffs assert that the trial court erred in denying their request for a hearing on the constitutionality of the Medical Malpractice Act. This argument, however, is not properly before this court, because the denial of plaintiffs’ request for a hearing is the subject of a separate judgment rendered on October 30, 2007, which judgment is not before this court in the instant appeal.
 

 CONCLUSION
 

 For the foregoing reasons, we affirm the judgment of the trial court granting summary judgment in favor of defendants, Lifeline Emergency Medical Services Company, Inc. and Royal Indemnity Company, and dismissing plaintiffs’ claims against them with prejudice. All costs of this appeal are assessed to the plaintiffs, Jerry Bickham, Ella Bickham, Candace Bickham, and Jyra Bickham.
 

 AFFIRMED.
 

 [1]
 

 . Although the parties do not contest the status of Lifeline as a qualified health care provider on appeal, we note that the letter from the PCF is considered prima facie proof that the provider is a qualified health care provider under the Medical Malpractice Act, and the plaintiffs have offered no countervailing evidence as to Lifeline’s qualification.
 
 See Hidalgo v. Wilson Certified Express, Inc.,
 
 94-1322, p. 5 (La.App. 1st Cir.5/14/96), 676 So.2d 114, 117;
 
 Roberson v. Arcadia Healthcare Center, Inc.,
 
 37,761, p. 10 (La.App. 2nd Cir.7/9/03), 850 So.2d 1059, 1065-1066;
 
 Remet v. Martin,
 
 98-2751, pp. 6-9 (La.App. 4th Cir.3/31/99), 737 So.2d 124; 128-129,
 
 Goins v. Texas State Optical, Inc.,
 
 463 So.2d 743, 745 (La.App. 4th Cir.1985);
 
 see also
 
 LAC 37:111.515.
 

 [2]
 

 . La. R.S. 40:1299.43(B) was amended in 2004 and now provides:
 

 (1) “Future medical care and related benefits” for the purpose of this Section means all of the following:
 

 (a) All reasonable medical, surgical, hospitalization, physical rehabilitation, and custodial services and includes drugs, prosthetic devices, and other similar materials reasonably necessary in the provision of such services, incurred after the date of the injury up to the date of the settlement, judgment, or arbitration award.
 

 (b) All reasonable medical, surgical, hospitalization, physical rehabilitation, and custodial services and includes drugs, prosthetic devices, and other similar materials reasonably necessary in the provisions of such services, after the date of the injuiy that will be incurred after the date of the settlement, judgment, or arbitration award.
 

 (2) “Future medical care and benefits” as used in this Section shall not be construed to mean non-essential specialty items or devices of convenience.
 

 [3]
 

 . Plaintiffs did not introduce any evidence that the settlement with the PCF for $700,000 was for medical care and related benefits only, so that they could proceed against other qualified health care provider defendants for the remaining $400,000 of the statutory cap.